1

2

3

4

5

6                                      UNITED STATES DISTRICT COURT

7                                             DISTRICT OF NEVADA

8                                                      * * *

9  STEVIE YATES, a minor child by his )
   Guardian Ad Litem, STEPHANIE YATES, )
10 and STEPHANIE YATES and STEPHEN )            03:07-CV-00200-LRH-RJJ
   YATES, )

11        )
                  Plaintiffs, )               ORDER
12        )
    v. )
13        )
   WASHOE COUNTY SCHOOL DISTRICT, )
14        )
                  Defendant. )
15        )
   _____ )
16        )
   WASHOE COUNTY SCHOOL DISTRICT, a )
17 political subdivision of the State of Nevada, )
          )
18            Cross-Appellant, and )
              Counter-Claimant, )
19        )
    v. )
20        )
   STEVIE YATES, a minor child by his )
21 Guardian Ad Litem, STEPHANIE YATES, )
   and STEPHANIE YATES and STEPHEN )
22 YATES, )
          )
23            Cross-Appellee, and Cross- )
              Defendants. )
24        )
   _____ )

25

26

1    Presently before the court is plaintiffs', Stevie Yates, Stephanie Yates, and Stephen Yates

2   (collectively, "Plaintiffs"), Opening Brief on Appeal (# 32).  Defendant Washoe County School

3   District ("WCSD") has filed an answer (# 40) to which Plaintiffs responded(# 47) and replied (#

4   45).  WCSD subsequently replied (# 48) to Plaintiffs' response.  Also before the court is Plaintiffs'

5   Motion to Strike (# 46).  Defendants have filed a response (# 49), and Plaintiffs replied (# 50).

6   **I.  Factual and Procedural Background[1]**

7    This is a civil action brought pursuant to the Individuals with Disabilities Education Act

8   ("IDEA"), 20 U.S.C. § 1400 *et seq*.  Stevie Yates ("Stevie") is a student at Reno High School who

9   suffers from autism[2] and apraxia.[3]  *See* (Admin. R. at 22:3, 1398.)  As a result of his conditions,

10   Stevie has not been able to develop functional verbal skills.  *Id*. at 1342.  Thus, Stevie uses

11   technological devises to communicate and meet his needs.  *Id*. at 1342, 1632-1633, 1635.  Stevie

12   has made gains in his ability to communicate.  *Id*. at 1652.  "His ability to communicate with a

13   variety of people and in a variety of contexts is emerging."  *Id*.

14    Stevie has behavior issues that are addressed with the use of a Behavior Intervention Plan

15   ("BIP").  *See id.* at 1523-25, 1668-70.  The BIPs provide general information about Stevie, identify

16   his behavioral problems, and provide instructions on how to respond.  *Id*.  Stevie's BIP dated

17   January 19, 2005, indicates that Stevie is most successful in a positive environment that he is

18   _____

19    [1]The majority of factual allegations presented by Plaintiffs are not supported by any citation to the
    record. For example, Plaintiffs' points and authorities include an argument section that  is virtually devoid of
20   any citation to evidence that would support their position. It is not the role of this court to scour the record in
    search of evidence to support a parties' position. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774-75
21   (9th Cir. 2002) (citing *Huey v. UPS, Inc.*, 165 F.3d 1084, 1085 (7th Cir. 1999) ("[J]udges need not paw over
    the files without assistance from the parties.")). Thus, the court will only rely on those factual statements that
22   are properly supported by the record.

23    [2]Autism is a developmental disability that affects communication and social interaction. (Pls.' Opening
    Brief (# 32) at 5.)
24

25    [3]Apraxia is a motor disorder that prevents speech. (Pls.' Opening Brief (# 32) at 5; Admin. R. at 22:3.)

26

1    familiar with.  (Admin. R. at 1523.)

2         Stevie was assessed to have below-average cognitive abilities.  *Id*. at 1398, 1415.  As a

3    result, Stevie participates in the Nevada Alternate Scales of Academic Achievement and is working

4    toward an adjusted diploma.  *Id*. at 1445-52, 1655, 1664.  Stevie has strong gross motor skills and

5    fine motor skills and is independent in completing self care tasks in the home environment.  *Id*. at

6    1645, 1647.

7         Stevie's March 2005 Individualized Education Plan ("IEP") provides for quarterly

8    specialized progress reports and district report cards along with daily home notes or ongoing

9    communication log from his assistant.  *Id*. at 1633.  From February 4, 2005, to April 7, 2006, Stevie

10   has received progress reports indicating that he has either met an objective or was making progress

11   towards his goal.  *Id*. at 1024-30, 1268-71, 1272-75, 1276-77.

12        During the 2004-2005 school year, Stevie received 88 percent of his education in the

13   general education setting.  (Admin. R. at 917.)  During the 2005-2006 school year, Stevie received

14   English instruction in a special education resource room because he was unable to receive an

15   educational benefit in a general education setting.  *Id*. at 918.  The remainder of the school day was

16   spent in regular education classrooms.  *Id*.

17        The dispute in this case arose out of WCSD's proposed IEP dated April 5, 2006.  (Appeal

18   (# 1) ¶ 15.)  The April 5, 2006, proposed IEP provides that Stevie would spend 60 percent of his

19   day in the regular education environment.  (Admin. R. at 918, 1641-1667.)  Pursuant to the IEP,

20   Stevie would receive his English instruction, math instruction, and vocational instruction in the

21   special education environment.  *Id*.

22        As a result of the proposed IEP, Plaintiffs filed a due process complaint alleging that

23   WCSD failed to offer Stevie a free appropriate public education ("FAPE") in violation of IDEA.

24   The Hearing Officer ("HO")  issued her decision on December 22, 2006.  *Id*. at 906.  The HO

25   agreed Stevie should receive his math instruction in the special education resource room as

26

1   opposed to a regular education classroom. *Id*. at 931. The HO also found Stevie was not denied a

2   FAPE when his BIP was not included in the proposed April 2006 IEP. *Id.* at 935-37. The HO did

3   find, however, that WCSD violated IDEA by failing to include a statement in the proposed IEP

4   listing the particular assistive technology devices Stevie requires to receive a FAPE. *Id.* at 931-35.

5        Plaintiffs appealed the HO's decision, and WCSD filed a cross-appeal. A State Review

6   Officer ("SRO") issued his decision on April 5, 2007. *Id*. at 1901. The SRO agreed with the HO

7   that Stevie's receipt of math instruction in the special education resource room is consistent with

8   IDEA's least restrictive environment mandate. *Id*. at 1921. The SRO reversed the HO on the issue

9   of whether WCSD violated IDEA by not including the BIP in Stevie's IEP. *Id*. at 1922-28.

10  Finally, the SRO affirmed the HO's finding that WCSD violated IDEA by failing to include a

11  statement of particular assistive technology devices Stevie requires to receive a FAPE. *Id.* at 1938-

12  40. This appeal was subsequently initiated on April 25, 2007. Plaintiffs appeal the SRO's decision

13  that WCSD offered Steve a FAPE in the least restrictive environment. WCSD filed a cross-appeal

14  challenging adverse rulings concerning the failure to include a list of assistive technology devices

15  in the proposed IEP and the failure to include the BIPs with the IEP.

16  **II.  Legal Standard**

17       IDEA was enacted "to ensure that all children with disabilities have available to them a free

18  appropriate public education that emphasizes special education and related services designed to

19  meet their unique needs and prepare them for further education, employment, and independent

20  living." 20 U.S.C. § 1400(d). "An appropriate public education does not mean the absolutely best

21  or potential-maximizing education for the individual child. . . .  The states are obliged to provide a

22  basic floor of opportunity through a program individually designed to provide educational benefit

23  to the handicapped child." *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994) (citations

24  and internal quotations omitted).

25       In case of a dispute between the school district and the parents, IDEA permits the parents of

26

4

1  disabled children to "present a complaint . . . with respect to any matter relating to the

2  identification, evaluation, or educational placement of the child, or the provision of a free

3  appropriate public education to such child."  20 U.S.C. § 1415(b)(6).  The statute provides that a

4  parent who submits such a complaint "shall have an opportunity for an impartial due process

5  hearing."  20 U.S.C. § 1415(f)(1)(A).  IDEA further permits any party aggrieved by the finding and

6  decision in the due process hearing to file a civil action in state or federal court.  20 U.S.C. §

7  1415(i)(2).  In any action seeking judicial review of the administrative decision, "the court . . . (i)

8  shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the

9  request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant

10  such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(C).

11         Judicial review of a state hearing officer's decision involves two steps.  *Smith*, 15 F.3d at

12  1524.  "First, the court must determine whether the rigorous procedural requirements of IDEA have

13  been met.  Second, the court must determine whether the state has met the substantive component

14  of IDEA - the requirement that the state provide an 'appropriate' education."  *Id*. (citing *Bd. of*

15  *Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 206-07

16  (1982)).

17         The standard of review to be conducted pursuant to IDEA has been described as a

18  "modified *de novo* review."  *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270

19  (3d Cir. 2003); *see also Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001)

20  ("Complete *de novo* review . . . is inappropriate.").  This modified *de novo* review requires the

21  district court to give "due weight" to the hearing officer's decision.  *Capistrano Unified Sch. Dist.*

22  *v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995).  This court cannot substitute its notion of sound

23  educational policy for those of the school authorities.  *Ojai Unifed Sch. Dist. v. Jackson*, 4 F.3d

24  1467, 1472 (9th Cir. 1933).  The amount of deference due to state educational agencies is a matter

25  for discretion of the courts.  *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir.

26

1  1987).  However, "the amount of deference bestowed upon the hearing officer is increased where

2  her findings are 'thorough and complete.'" *Adams v. State of Oregon*, 195 F.3d 1141, 1145 (9th

3  Cir. 1999) (quoting *Smith*, 15 F.3d at 1524).  "The burden of proof in an administrative hearing

4  challenging an IEP is properly placed upon the party seeking relief." *Schaffer v. Weast*, 546 U.S.

5  49, 67 (2005).

6  **III.  Discussion**

7        **A.  Least Restrictive Environment**

8        The primary issue in this case requires the court to determine whether a preponderance of

9  the evidence supports the SRO's decision that Stevie's receipt of math instruction in the special

10  education resource room is consistent with IDEA's least restrictive environment ("LRE") mandate.

11  Plaintiffs argue the regular education classes are the LRE for addressing limited functional goals of

12  money, time and measurement.  WCSD, on the other hand, contends that Stevie will not receive a

13  satisfactory education in such environment.

14        Pursuant to IDEA, children with disabilities are to be educated in the least restrictive

15  environment.  20 U.S.C. § 1412(a)(5).  Specifically, § 1412(a)(5) provides as follows:

16        To the maximum extent appropriate, children with disabilities, including children in
      public or private institutions or other care facilities, are educated with children who
17        are not disabled, and special classes, separate schooling, or other removal of
      children with disabilities from the regular educational environment occurs only
18        when the nature or severity of the disability of a child is such that education in
      regular classes with the use of supplementary aids and services cannot be achieved
19        satisfactorily.

20  *Id*.  Section 1415(a)(5) sets forth a preference for educating children with disabilities in regular

21  education classrooms. *Sacramento City Unified Sch. Dist., Bd. of Educ. v. Rachel H.*, 14 F.3d

22  1398, 1403 (9th Cir. 1994) (citations omitted).  A four-factor balancing test is used to determine the

23  appropriate placement for a child with disabilities. *Id*. at 1404.  The four factors the court considers

24  are: "(1) the educational benefits of placement full-time in a regular class; (2) the non-academic

25  benefits of such placement; (3) the effect [the student] had on the teacher and children in the

26

1    regular class; and (4) the costs of mainstreaming [the student]." *Id*. at 1404.  In this case, the

2    parties agree that cost is not an issue.

3        As previously mentioned, WCSD's April 5, 2006, proposed IEP provides that Stevie would

4    receive his math instruction in the special education environment.  (Admin. R. at 918, 1641-1667.)

5    The SRO applied the *Rachel H.* factors in making his decision.  The SRO first noted that Stevie's

6    progress with his math goals has been minimal and not meaningful.  *Id*. at 1917.  Applying the

7    *Rachel. H.* test, the SRO noted that Stevie "has a wealth of opportunities for regular education

8    classes and other activities throughout the day to obtain the non-academic benefits of interaction of

9    other children who are not disabled." *Id*. at 1919.  Thus, the SRO did not weigh the non-academic

10   benefits Stevie would receive in the regular education environment as heavily in his analysis.  *Id*.

11   The SRO further found that the only possible disruption Stevie's presence would have related to the

12   implementation of his direct instruction as such instruction may be distracting to the teacher and

13   other students.  *Id*.  However, the SRO stated that whether such activities would be disruptive was

14   not a significant factor used in this case.  *Id*.  Finally, the SRO concluded that the educational

15   benefits available to Stevie in the math resource room outweigh the educational benefits to him

16   through embedded activities in the general education environment.  *Id*. at 1920-21.

17       Plaintiffs challenge the SRO's application of the *Rachel. H.* factors.  With respect to the

18   first factor, educational benefits, Plaintiffs argue Stevie will receive more educational benefit from

19   the regular education classes than he is likely to receive if placed in a special education resource

20   room.  Specifically, Plaintiffs argue Stevie has received an educational benefit from placement in

21   the general education environment.  Although Plaintiffs have failed to cite to any evidence to

22   support their position, they do, in part, rely on progress reports indicating that Stevie had either met

23   or was making progress on his goals and objectives.  Plaintiffs further argue that Stevie will receive

24   an educational benefit once an overall program of instruction is carefully designed.  Finally,

25   Plaintiffs argue, again without citing any evidence, that Stevie would not receive an educational

26

benefit from the special education resource room.  WCSD, on the other hand, argues the SRO appropriately balanced the *Rachel H.* factors.  WCSD argues that the evidence shows Stevie will not receive a satisfactory education in the general education environment.

The court finds that a preponderance of evidence supports the SRO's finding that the educational benefits available to Stevie in the math resource room outweigh the educational benefits to him through embedded activities in the general education environment.  Jill Barlow ("Barlow"), the WCSD autism specialist assigned to Stevie, testified that the school district has previously attempted to meet Stevie's math goals and objectives through other classes in his schedule.  (Admin. R. at 554:21-555:5, 558:18-22.)  Nevertheless, Barlow testified that educating Stevie in that environment had not allowed Stevie to make meaningful gains in this area.  *Id*. at 555:5-6.  Thus, Barlow opined that Stevie needs a setting where he can have direct instruction from a classroom teaher.  *Id.* at 553:11-14.  Barlow further testified that this instruction probably needs to be in a smaller setting that would allow Stevie an opportunity to be given verbal instruction from an adult.  *Id*. at 553:15-19, 558:2-9.  Thus, the evidence provided to the court demonstrates that Stevie has not been able to make meaningful gains in the regular education environment and needs to be in a smaller setting where he can receive verbal instruction.  As Plaintiffs have not provided the court with any rebuttal evidence, the court agrees with the HO and SRO that this factor weighs in favor of the special education resource room.

The second *Rachel. H.* factor requires the court to look at the non-academic benefits of the placement.  14 F.3d at 1404.  As previously mentioned, the SRO did not weigh this factor heavily because Stevie has other opportunity for regular education classes and to interact with non-disabled children.  (Admin. R. at 1919.)  Plaintiffs argue that the SRO erred in giving less weight to the non-academic factor.  WCSD disagrees with Plaintiffs arguing that the SRO gave appropriate weight to this factor.

The court finds no error in the SRO's decision to give the second *Rachel. H.* factor less

weight.  Both parties agree on the importance of Stevie reaching his goals.  Furthermore, as noted by the SRO, Stevie has opportunities during the day to interact with non-disabled children in the regular education environment.  Plaintiffs have presented no evidence to the court showing what additional non-academic benefit Stevie would receive from have having his math instruction in the general education environment.  Thus, the court finds no error in giving the academic benefit factor more weight under the circumstances of this case.

The final *Rachel H.* factor relevant to this case requires the court to consider the effect Stevie has on the teacher and children in the regular education environment.  14 F.3d at 1404.  The SRO found that the only possible disruption Stevie's presence would have related to the implementation of his direct instruction as such instruction may be distracting to the teacher and other students.  (Admin. R. at 1919.)  Nevertheless, the SRO stated that whether such activities would be disruptive was not a significant factor used in this case.  *Id.*  Plaintiffs argue that this factor weighs in favor of including Stevie in the regular education environment.  Defendants contend that the SRO appropriately considered this factor.

Plaintiffs have presented evidence that Stevie did not cause disruptions in class.  *Id*. at 206:10-12.  However, WCSD has pointed out evidence indicating the intensive instruction Stevie requires to obtain his math skills can be disruptive.  *Id*. at 553:20-25.  Thus, the evidence supports the SRO's decision.

In looking at all the *Rachel. H.* factors, the court finds the SRO appropriately considered the evidence and weighed the factors.  Plaintiffs have failed to meet their burden of showing a violation of IDEA's LRE mandate.  As a result, the SRO's decision as to the appropriate placement for Stevie will be affirmed.

**B. Assistive Technology Devices**

**1. Prevailing Party Status**

WCSD filed a cross-appeal challenging the SRO's decision requiring the school district to

9

1   specifically identify the assistive technology devices ("ATDs") in Stevie's proposed IEP.  Although

2   the SRO found a violation, the SRO also concluded that this error did not rise to the level of

3   denying Stevie a FAPE.  *Id.*  Because the SRO found no denial of FAPE, WCSD argues that

4   Plaintiffs cannot be designated a prevailing party entitled to recover attorney's fees.  Plaintiffs

5   respond, in part, by arguing that it is premature to determine whether they are entitled to prevailing

6   party status and an award of attorney's fees and costs.  The court agrees.  The issue of whether

7   Plaintiffs are the prevailing party is appropriately determined if a motion for attorney's fees and

8   costs is filed.  *See* 20 U.S.C. § 1415(i)(3)(B) (permitting an award of attorney's fees as part of the

9   costs to a prevailing party.).

10                       **2.  Evidentiary Rulings and Motion to Strike**

11           WCSD next challenges the HO's decision preventing WCSD from introducing evidence of

12   proposed language describing ATDs and services offered to Plaintiffs during the resolution process.

13   WCSD has attached the evidence that was excluded by the HO as an exhibit.  Plaintiffs argue that

14   the HO and SRO properly excluded evidence regarding negotiations.[4]

15           20 U.S.C. § 1415(i)(2)(C)(ii) requires the court to "hear additional evidence at the request

16   of a party" in any action seeking judicial review of an administrative decision.  The Ninth Circuit

17   has construed the word "additional" to mean supplemental.  *Jackson*, 4 F.3d at 1472-73.  Therefore,

18   section 1415(i)(2)(C)(ii) "does not authorize witnesses at trial to repeat or embellish their prior

19   administrative hearing testimony."  *Id*. at 1473.  Reasons for supplementing the record "might

20   include gaps in the administrative transcript owing to mechanical failure, unavailability of a

21   witness, an improper exclusion of evidence by the administrative agency, and evidence concerning

22   relevant events occurring subsequent to the administrative hearing."  *Id*.  The party requesting to

23   supplement the record must provide a solid justification for admitting the additional evidence.  *E.S.*

24   _____

25          [4]Plaintiffs also argue that the failure to adequately describe the ATDs denied Stevie a FAPE.  As
     previously mentioned, the SRO found no denial of FAPE.  Because Plaintiffs have not appealed this portion
     of the SRO's decision, the issue is not properly before the court.

26                                                    10

1   *v. Indep. Sch. Dist., No. 196 Rosemount-Apple Valley*, 135 F.3d 566, 569 (8th Cir. 1998); *Brandon*

2   *H. ex rel. Richard H. v. Kennewick Sch. Dist. No. 17*, 82 F.Supp.2d 1174 (E.D. Wash. 2000).

3          As WCSD is arguing the HO and SRO erred in omitted evidence from the resolution

4   process, § 1415(i)(2)(C)(ii) governs the issue.[5]  During the due process hearing, WCSD offered

5   evidence with regard to language it had proposed to Plaintiffs to describe the ATDs.  (Admin. R. at

6   1905.)  Plaintiffs objected to the evidence arguing that it constituted settlement negotiations.  *Id*.

7   The HO determined that the evidence should be barred under Section 48.105 of the Nevada

8   Revised Statutes.  *Id*.  The SRO upheld the ruling.  The SRO based his decision on the strong

9   policy underlying the resolution process to resolve disputes.  *Id*. at 1906.

10          Pursuant to § 1415(f)(1)(B) of IDEA, the parties to a dispute must convene a meeting to

11   discuss the resolution of the complaint.  20 U.S.C. § 1415(f)(1)(B).  WCSD argues that §

12   1415(f)(1)(B) does not require the mandatory resolution session to be treated as confidential in any

13   future proceeding.

14          Upon carefully considering the parties' points and authorities, the court will not allow any

15   additional evidence in reviewing the decision of the SRO.  WCSD has failed to present a solid

16   justification for admitting the evidence.  Even if such evidence were permissible, a decision the

17   court need not make, WCSD has failed to demonstrate how such evidence supports the conclusion

18   that there was no violation of IDEA.  WCSD focuses its discussion on whether such evidence is

19   admissible without addressing the import of such evidence.  Without any discussion of the

20   evidence, WCSD cannot meet its burden of showing error in the SRO's opinion.

21          Although the court will not consider the additional evidence, the court finds Plaintiffs'

22   motion to strike unwarranted.  Such evidence was appropriately filed with this court to allow for

23   review in the event it was to be considered.  *See* 20 U.S.C. § 1415(i)(2)(C)(ii).

24

---

25          [5]The documents submitted by WCSD were excluded from evidence at the administrative level and thus
     did not form part of the administrative record.

26

11

### C. The Behavior Intervention Plan

The final issue the court must decide is whether the proposed April 2006 IEP adequately considers positive behavioral interventions, supports, and other strategies to address Stevie's behavior. The HO found that Stevie had no behavioral problems which might interfere with his learning or the learning of others in the classroom. (Admin. R. at 1922.) The SRO reversed the HO finding that a preponderance of the evidence shows that Stevie does, in fact, have such behavioral problems. The SRO noted that language in the proposed IEP "touches upon" Stevie's behavioral needs. *Id*. at 1927. However, the SRO further stated that "these provisions do not set forth as IDEA requires all the various interventions, supports, and strategies deemed necessary to address the [Stevie's] behaviors that impede his learning or that or other children." *Id*. Thus, the SRO found this failure to be a violation of IDEA. *Id*. at 1928. To remedy this violation, the SRO ordered WCSD to include Stevie's BIP as part of his IEP.

WCSD challenges the SRO's decision arguing the proposed April 2006 IEP specifically addressed Stevie's behavior and provided his educational team with the necessary positive behavioral supports and strategies required. Plaintiffs disagree and argue the proposed IEP fails to comply with IDEA. Alternatively, Plaintiffs argue the Nevada Administrative Code requires that a BIP be included in an IEP.

A BIP is not a procedural requirement for an IEP. There is no provision in IDEA requiring the BIP to be included in the IEP. Section 1414(d)(3)(B)(i) provides, however, that the IEP team shall "in the case of a child whose behavior impedes the child's learning or that of others, consider the use of positive behavioral interventions and supports, and other strategies to address that behavior." 20 U.S.C. § 1414(d)(3)(B)(I).

This court agrees with the SRO that the provisions of the proposed IEP do not set forth all the various interventions, supports, and strategies deemed necessary to address Stevie's behaviors that impede his learning or that or other children. Stevie's BIPs dated January 19, 2005, and

12

April 20, 2005, indicate that Stevie's behavioral problems include yelling, crying and biting. (Admin. R. at 1523, 1668.)  The proposed April 2006 IEP does mention the fact Stevie has behavioral problems.  One goal listed in the IEP is for Stevie "to demonstrate appropriate behavior when frustrated or angry as measured by observation, data collection and demonstrated by mastery of" his other objectives.  (Admin. R. at 1657.)  The proposed IEP sets forth a benchmark for Stevie to "self-manage his anger to the extent of not using physical aggressive force on adults during 100% of his interactions."  *Id.*  With respect to supplementary aids and services, the IEP provides for the "[u]se of a calm voice to ask Stevie to use his words & to direct him to use AT device" and for a "Positive Behavior Support Plan."  *Id*. at 1662.  The IEP further provides for the use of "social stories."  *Id*. at 1663.

This language in the proposed IEP does not show that the IEP team considered the use of positive behavioral interventions and supports, and other strategies to address Stevie's specific behavioral problems.  20 U.S.C. § 1414(d)(3)(B)(i).  It is not clear whether the IEP team considered each of Stevie's behavioral problems.  Because, the IEP did not adequately consider the use of positive behavioral interventions and supports, and other strategies to address Stevie's behavioral problems, the SRO ordered WCSD to include the BIP as part of the proposed IEP.  The court defers to the decision of the SRO as a reasonable method to resolve the deficiency of the proposed IEP.  Thus, the court finds WCSD has failed to meet its burden of showing an error in the SRO's opinion.

IT IS THEREFORE ORDERED that Plaintiff's Appeal (# 1) is hereby DENIED.

IT IS FURTHER ORDERED that WCSD's Cross-Appeal (# 10) is hereby DENIED.  The final decision of the State Review Officer is AFFIRMED.

///

///

///

13

1    IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike (# 46) is hereby DENIED.

2    IT IS SO ORDERED.

3    DATED this 27th day of August, 2008.

4

5

6    _____
     LARRY R. HICKS
     UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

14